## PARDEE et al. v. HOWCOTT et al.

## PARDEE CO. v. SAME.

Circuit Court of Appeals, Fifth Circuit.
April 15, 1929.

Nos. 5041, 5042.

John May and F. S. Weis, both of New Orleans, La., and Russell Duane and Roland S. Morris, both of Philadelphia, Pa. (Duane, Morris & Heckscher, of Philadelphia, Pa., on the brief), for appellants.

Hugh S. Suthon and Wm. Winans Wall, both of New Orleans, La., for appellees.

Before WALKER and BRYAN, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge. These two cases are appeals from decrees of the District Court for the Eastern District of Louisiana, dismissing the bills of complaint in each case. The bills of complaint sought an accounting from the defendant-appellee, Howcott, in each case. The appellee Howcott was the selling agent of the plaintiffs for lands owned by them over a continuous period from 1892 until 1911, and the plaintiffs claimed that he had not made to them a faithful accounting of all the moneys he had received from the purchasers of the lands sold by him for their account. The purpose of the bills was to force the appellee to account for the amounts of purchase money, which it was alleged he had received as the selling agent of the plaintiffs and had not paid over to them. The transactions of the individual plaintiff, Calvin Pardee and of the corporate plaintiff, the Pardee Company, extend over an uninterrupted and continuous period, and a single opinion may, for that reason, cover both.

In the case of Calvin Pardee, the fact

of agency was not in dispute, and the sole question was whether or not the defendant Howcott had made a full accounting to his principal. In the case of the Pardee Company, the agency of Howcott to sell the lands of the corporation was disputed, though it seems to us that the dispute related rather to the character and terms of the agency than to its existence. There were 61 different transactions involved in the two suits,—32 in the Calvin Pardee suit and 29 in the Pardee Company suit. The transactions reflect upon each other, as might be expected from their continuity. The formation of the corporation defendant was only for the convenience of carrying the titles and facilitating the settlement of the estate in the event of the death of Calvin Pardee.

## Calvin Pardee Case.

In this case, the relation of principal and agent between Calvin Pardee and the defendant Howcott was established beyond dispute. There were temporary misunderstandings and interruptions due to them, and the terms of agency were not the same in all the 32 transactions between Calvin Pardee and Howcott. There is no serious question but that the relation of the parties to most of these 32 sales entitled the plaintiff to an accounting. The litigated question was whether or not Howcott had made a full accounting to Pardee for all the proceeds of the sales, coming into his hands, less proper expenses and reasonable commissions. The master allowed Howcott 10 per cent. commissions in the majority of the transactions; 5 per cent. in a few; and disallowed him any in a few. He also allowed him such expenses as Howcott was able to establish by vouchers or by his oral evidence. A fire had destroyed many of the vouchers and records in Howcott's possession, before the taking of testimony before the master. The first transaction in the series of 32 occurred November 22, 1892; the last, October 4, 1907; the bill was filed July 3, 1914. Howcott's recollection, in many instances, failed him as to what expenses were represented by the differences between his remittances to Pardee and the purchase price to the ultimate purchaser, and the master allowed him nothing for these unexplained differences. The plaintiff complains concerning the transactions, which the master treated as entitling him to an accounting, that the master allowed expenses not proven, excessive commissions, and did not allow interest. We think the

record shows that the master's findings, in these transactions, as to the allowance of expenses (which were also approved by the District Judge) were fairly established by the evidence, and that none were allowed that were not proven. We also think that the commissions allowed were not excessive in amount and were confined to instances in which commissions were proper. As to the failure to allow interest, the plaintiff Calvin Pardee profited thereby. All the items charged against him were the result of the 16 transactions first in point of time; while the items credited to him arose substantially out of the 16 transactions last in point of time; the aggregate of the items charged against the plaintiff was $3,216.11, the aggregate of those charged against the defendant was $1,369.60. More interest, if it had been allowed, would have been due Howcott than due Pardee on a proper accounting. In view of the lapse of almost seven years between the last item of the account and the filing of the bill of complaint, and the showing of injury to Howcott, caused by the delay, arising out of the destruction of his records and documents and the natural failure of recollection as to items of expenditure, and the unsatisfactory explanation of the delay given by Pardee with the opportunities of record always available, and his having had a representative in Louisiana who was entirely independent of Howcott, we think his demand for an accounting came too late and was barred by laches.

A few of the 32 transactions were held by the master to have been of a kind that did not entitle Pardee to an accounting, for the reason that they were net transactions. By this, the master intended that the agreement as to them between Pardee and Howcott was that Pardee was to receive a price fixed in advance and that Howcott was to have any amount over and above the amount fixed as his own. There can be no doubt that it is legally competent for a principal to make with his selling agent an agreement of this kind, and if the selling agent acts in good faith, and is guilty of no deceit as to the value and circumstances of the lands involved, the agent would not be held to an accounting beyond the price fixed. Some of the transactions involve a mere agreement to give Pardee a minimum price; expenses and commissions to come out of the ultimate purchaser. As to these, Howcott would be liable to account to Pardee for the difference between the minimum price agreed upon and the amount paid to How-

84

cott by the purchaser, less what he was able to show were reasonable commissions and expenses, actually incurred by him. In some of the transactions the agreement was that Pardee should have a maximum price, agreed upon in advance, and Howcott the remainder. In this class, the plaintiff Pardee, if Howcott was guilty of no fraudulent inducement, would be entitled only to the price agreed upon. Howcott could be made to account beyond the agreed price only upon proof of deceit or fraud on his part in inducing the sale. The master and the District Judge both found from the evidence that Howcott was guilty of no fraud or deceit of this kind and that Pardee was acquainted with values and was kept informed of them by agents, who acted independently of Howcott, and did not report through him, but to Pardee direct.

■ A typical transaction of the latter kind was the sale of what was known as the Erin Plantation, consisting of 1,139 acres in Tensas parish, La., to Howard Cole, for $3,500. Pardee had agreed in advance with Howcott by his letter of May 11, 1900, to accept $2,800 for the land. Howcott deducted from the $3,500 he had received from Cole $233.32 for expenses of abstract and travel, and remitted to Pardee the remainder, $3,266.68. Thereafter Pardee returned to Howcott $466.68, leaving in Pardee's hands a balance of $2,800, which was the price Pardee had agreed to receive for the lands. Pardee treated the transaction as one in which Howcott was entitled to all received by him in excess of the $2,800 agreed upon. Before Pardee remitted the $466.68 he knew that Howcott had already deducted his expenses. There could have been no reason for returning to Howcott $466.68, except to give Howcott the surplus received from Cole over the $2,800 Pardee had agreed to accept. The master and the district judge properly held that there was no accounting due Pardee from Howcott as a result of this transaction.

In a transaction (numbered 18) in which a sale of about 2,000 acres was made to William Edenborn by Howcott for Pardee, Howcott deducted $1,981.32 for curing defects in the title, which amount Pardee criticized as excessive. This was in June, 1907. Subsequently the endeavor of the parties seems to have been to avoid controversy regarding deductions by fixing a minimum price to Pardee, expenses and commissions to be added thereto, and to come out of the ultimate buyer. In some instances, as in that of the Erin Plantation, the agreement went

further and gave Howcott the entire surplus over the price fixed between them, which became a maximum price.

■ Another transaction (numbered 30) concerned the sale of 9,101 acres of land in Granada county, Miss., to Claude Maley. This transaction involved the greatest discrepancy between the amount remitted to Pardee and the amount paid by the purchaser, and requires particular mention. On July 22, 1906, Howcott claimed to have contracted to sell the lands involved to Fleming Ware for $70,000. On July 27, 1906, Pardee by letter approved the sale at that fixed price. A deposit of $12,500 was made by Ware. Howcott then secured a subpurchaser in the person of Claude Maley for an increased consideration of $12,000 in money and three notes of $19,333 each. Pardee at the request of Howcott executed to Howcott a deed for the land in consideration of $82,000, which was $12,000 more than the net price. On September, 29, 1906, Howcott conveyed the lands to Maley for the increased consideration mentioned, collected the money consideration, amounting to $82,000, remitted to Pardee $70,000; turned over to Ware Maley's three notes, and received from Pardee on October 11th a letter stating that "be the sales for more or less than the lands are worth I am content with the price they will net me, $70,000." About 1,200 acres of the lands were rejected by Maley because of defects in title. The rejected acreage was subsequently (in December, 1908) sold by Howcott for account of Ware for about $14,000, and Pardee executed a deed to Howcott, without consideration, covering the rejected acreage. The existence or identity of Ware was a matter of contest. The master and district judge found that he was an actual person and that the sale to him was a real one, and the transaction with Maley a bona fide resale. We find no reason to differ with their findings. Pardee accepted the net price of $70,000, when he knew Howcott was to receive $12,000 more upon a reconveyance, and conveyed the rejected acreage to Howcott more than two years later, without additional consideration. Pardee is not shown to have known of the part of the consideration evidenced by Maley's three notes, aggregating $58,000. Howcott testified that these notes were turned over by him to Ware. If Ware was the real owner of the notes, upon the resale to Maley by him, Pardee has no claim against Howcott because of the notes. Pardee was informed by the documents signed by him of the increased consideration over

the net price and of the disposition of the rejected acreage, and expressed himself as content with the net price, and will not now be permitted to hold Howcott either for the $12,000, the three notes, or the money received for the rejected acreage, which Howcott testified he had received for the account of Ware. Lapse of time and ratification stand in the way of his doing so.

As to those transactions, in which the plaintiff was held entitled to an accounting, we think the master has fairly stated the account between the parties, and, as to those, in which the master determined that the plaintiff was not entitled to an accounting, we think he rightly so determined. As the decree of the District Court, dismissing the bill, was in line with the master's conclusion, its decree is affirmed.

### Pardee Company Case.

In the fall of 1907 Calvin Pardee, for legal reasons, incorporated a company to take over and handle his lands in Louisiana and Mississippi. The corporation's capital stock was owned by him, and there was no real change in the status accomplished. The relation between Howcott and Pardee was continued as between Howcott and the corporation, after its incorporation. Howcott undoubtedly remained a selling agent of the Pardee Company. The terms of the agency became a matter of dispute. The plaintiff contended that Howcott sold on a commission basis, while the defendant contended that he sold for the company in all cases at an agreed maximum price fixed by the company in advance, with the understanding that he was to have the excess paid by the purchaser as his profit or commission in the transaction. The defendant contended that the price fixed was not merely a net or minimum price, allowing to Howcott only reasonable expenses and commission, to be collected from the ultimate buyer, any excess over which received from the buyer, Howcott would be accountable to seller for; but a maximum price in the sense that the seller was to have no interest in the overplus above the fixed price, but it was to belong to Howcott regardless of its relation to proper commissions and expenses. If the latter was the agreement, we think it was a competent one for the parties to have made. It would have created the relation of principal and agent and have required of the agent to act in good faith and without fraud in its execution. If the record shows that such an agreement was made and that there was no fraud on Howcott's part in its execution, the plaintiff would not be entitled to an accounting from Howcott.

The record shows that in the summer of 1907 and before the Pardee Company was formed, Calvin Pardee withdrew his lands from sale by Howcott, and that the interruption of relations continued till October, 1907. On October 7, 1907, Alfred Pardee, who was the son and agent of the plaintiff, had an interview with Howcott in his office in New Orleans. The result of the interview is a matter of dispute. The plaintiff asserts that Howcott agreed to resume his selling agency on a fixed commission basis. Howcott asserts that he agreed to act for plaintiff only upon the understanding that he was to have as his profit all over a price which the plaintiff had fixed, regardless of how much in excess of expenses and commissions it might be. Howcott testified that, apprehending trouble with Alfred Pardee, he requested a witness to remain at the interview and listen to the conversation, and also instructed his stenographer to take it down. For the plaintiff, Alfred Pardee, testified as stated. For the defendants, Howcott, the stenographer, and the witness testified in support of their contention. On October 12, 1907, Howcott testified to having written a letter, which set out the same terms as being the only ones he would consent to sell under. They were a fixed price basis, all overplus to belong to Howcott. The receipt of this letter was denied by Alfred Pardee. Howcott did subsequently resume the selling of the lands of the Pardee Company, which was incorporated in November, 1907, upon some terms. There was a subsequent interview between Howcott, Alfred Pardee, and P. A. Groff, the last two officers of the Pardee Company, in Philadelphia, in December, 1908, which indicated that Howcott was not then selling on a fixed commission basis. We think the evidence fully warranted the conclusions that were reached by the master and district judge that Howcott in the interview at New Orleans, on October 7, 1907, refused to sell the lands of the Pardee Company on any other basis than that of a maximum price. The record does not show that any different arrangement was arrived at thereafter, but does show that Howcott resumed sales for the Pardee Company later on some basis, and that it was not on the basis of two and four dollar commissions, which was that testified to by Alfred Pardee. As the only other basis was that testified to by Howcott, we think it should be accepted as the true one. As Howcott, under that kind of

arrangement, was entitled to the overplus, in the absence of a showing of bad faith or fraudulent inducement, the plaintiff was entitled to an accounting only if it showed that Howcott was guilty of bad faith or fraudulent inducement. The master and the district judge both found that Howcott was guilty of no deceit or fraud. Fraud is not presumed. To establish it, plaintiff would have had to show that Howcott made representations to the plaintiff to induce it to consent to a sale of its lands at an agreed price net to plaintiff; that the representations were false; that Howcott knew they were false when he made them; and that he made them to induce plaintiff to agree to a sale of its lands at an inadequate price. There is evidence in the record that Howcott frequently urged the plaintiff to sell its lands and gave it an opinion as to their value, which was less than the price actually received by him from the buyer; represented that they had been trespassed upon and denuded of timber; and that redress at law therefor would be unavailing; that the market for timber lands was bad, due to business depression. The record does not satisfactorily establish the falsity of the representations, Howcott's knowledge of their falsity, or that Howcott's purpose in making them was to defraud the plaintiff. The correspondence shows that the Pardees were themselves anxious to sell the lands of the company; that they had independent sources of information as to land values; and that, at times, their need for money made them willing to sell without any accurate respect to values. In all cases there was a substantial profit accruing to them from the sales made. If the selling arrangement was on the maximum price basis and the maximum price was fixed without fraudulent inducement on Howcott's part, the fact that the ultimate buyer paid to Howcott more than the fixed price, with reasonable expenses and commissions added, would not make Howcott accountable to the plaintiff for the difference. Under such an arrangement, if the net price was fixed without fraud on Howcott's part, he would not be under any duty to disclose to the plaintiff the price paid him by the purchaser, provided he did not misrepresent it. He kept within his obligation when he remitted the amount which the plaintiff had agreed to accept, and was guilty of no wrongdoing

that induced the plaintiff to so agree. The fact that Howcott received from the ultimate purchaser more than the price fixed between the plaintiff and himself is not conclusive that the agreed price did not represent the true value of the lands sold, in view of the fact that Howcott, with the knowledge and approval of the Pardees, used indirect methods with purchasers to enhance prices. In spite of protestations of friendship there seems to have been mutual distrust between Howcott and the Pardees from the summer of 1907 onward. The Pardees had substituted unsuccessfully for Howcott one Barr as their sales agent, and in October, 1907, they were forced to replace Barr with Howcott. They recognized that it required a man of Howcott's qualifications to move their lands, and continued to use him notwithstanding their lack of confidence in him. He was an indispensable, though dangerous, instrument; and they, recognizing him as such, adopted such expedients as net prices to protect themselves against him. While Howcott professed to act out of friendship and without compensation, his continued eagerness to sell for plaintiff indicates that in some way he profited by doing so. This anomalous situation accounts for otherwise unexplainable incidents in their relations. To this extent, the Pardees dealt at arm's length with Howcott and willingly profited by his dubious schemes, so long as they operated to sell their lands.

The transactions with the Pardee Company began in 1908, and the agency of Howcott continued to 1911. The bill of complaint of the Pardee Company was not filed until 1914. The doubt as to the right of the plaintiff to an accounting is increased by this delay in seeking it and the embarrassment the delay caused the defendant in preparing its defense.

While Howcott was an agent of the plaintiff for the sale of its lands, we think his obligation was confined to remitting to plaintiff the maximum agreed price and to abstain from fraud. It is conceded that he has remitted to plaintiff that price in all the transactions, in which he effected sales for it, and we find him guilty of no fraud. The plaintiff, therefore, is not entitled to an accounting and the decree of the District Court, denying the accounting and dismissing the bill, is affirmed.